**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Dr. Javier Vazquez D'Elia and | ) | |
| Mrs. Candy Vazquez, on their own behalf, | ) | |
| and on behalf of Colton Vazquez | ) | Civil Action |
| | ) | |
| **Plaintiff,** | ) | No. 2:21-cv-0500 |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL REQUESTED |
| Slippery Rock University, | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

AMENDED COMPLAINT

As set forth below, Dr. Javier Vazquez D'Elia and Mrs. Candy Vazquez, on their own behalf, and on behalf of Colton Vazquez, by and through the undersigned counsel, claim violations of the Americans with Disabilities Act and its implementing regulations, as well as Section 504 of the Rehabilitation Act of 1973. Plaintiffs Mr. and Mrs. Vazquez allege that Defendant Slippery Rock University denied their son an appropriate education, discriminated against their son on the basis of his disability, and retaliated against the protected actions of Plaintiffs.

**PRELIMINARY STATEMENT**

1. This is an action brought by Dr. Javier Vazquez D'Elia and Mrs. Candy Vazquez, parents of Colton Vazquez ("Student"), alleging violations of the Americans with Disabilities Act and its implementing regulations and Section 504 of the Rehabilitation Act of 1973.

2. Plaintiffs allege that Student was denied appropriate supports and services during his enrollment in the Slippery Rock University Rock Life Program.

3. Plaintiffs further allege that the Rock Life Program failed to adequately monitor Student's progress while enrolled, and as a result was deliberately indifferent to Student's needs, further violating Section 504 of the Rehabilitation Act.

4. Plaintiffs are requesting compensatory damages and attorneys' fees.

## PARTIES

5. Plaintiff Candy Vazquez ("C.V.") is the mother and natural legal guardian of Student, and she resides in Pittsburgh, Pennsylvania.

6. Plaintiff Javier Vazquez ("J.V.") is the stepfather and legal guardian of Student, and he resides in Pittsburgh, Pennsylvania.

7. Defendant Slippery Rock University is a public, coeducational university located in Butler County, Pennsylvania, and is a member of Pennsylvania's State System of Higher Education.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant is located in this venue and the events giving rise to the claims at issue occurred in the venue.

## PROCEDURAL HISTORY

10. In June 2020, Plaintiffs filed a timely request for an administrative Due Process Hearing with the Office for Dispute Resolution ("ODR") alleging, among other claims, that

Pittsburgh Public Schools (the "District") failed to appropriately supervise and implement the services outlined in Student's IEP, as required by Section 504 and the IDEA, while Student attended the Rock Life Program at Slippery Rock University.

11. As relief, Plaintiffs sought compensatory education for the period of deprivation, as well as reimbursement of reasonable attorneys' fees.

12. A Resolution Session between Plaintiffs and the District was convened pursuant to 34 C.F.R. §300.51. A Due Process hearing was also scheduled before Hearing Officer Michael "Jake" McElligott.

13. Plaintiffs and the District were able to resolve the administrative due process complaint amicably, and as a result the Due Process hearing was cancelled.

## FACTUAL ALLEGATIONS

### General Background Information

14. Colton Vazquez ("Student") is a 20-year-old student living in the School District of Pittsburgh.

15. Student has been identified as a student with a disability under the Intellectual Disability category and has diagnoses of Down syndrome and Apraxia of Speech.

16. In August 2017, prior to the start of Student's twelfth grade year, the District completed a Revaluation Report. At that time, the IEP team determined it was appropriate for Student to continue with community-based work, as well as to focus on increasing his opportunities to self-advocate.

17. Student's IEP team also determined that exploration into programming for students between the ages of eighteen and twenty-one was appropriate.

18. One program identified as potentially appropriate was the Rock Life Program at Slippery Rock University.

19. Slippery Rock University's Rock Life Program is a comprehensive transition program (CTP), described as a post-secondary education program for students with intellectual and developmental disabilities, focusing on academics, vocational, physical activity, and social skills.

20. Plaintiffs began investigating the program to determine if it would be an appropriate option for Student.

**Interactions with Slippery Rock University**

21. In April 2017, the family received correspondence from Dr. Robert Arnhold, who was then the Director of the Rock Life Program. At that time, Dr. Arnhold informed the family that students in the Rock Life Program would be provided access to unlimited career counseling beginning in the Fall of 2018.

22. Ultimately, it was decided that Student would apply to the Rock Life Program. He was notified on October 25, 2017 that he was accepted and was set to begin attending in the Fall of 2018.

23. Included in the application materials Student completed was a sample Rock Life Monthly Social Log. This document indicated that data would be collected and provided to Plaintiffs on a monthly basis confirming the socialization opportunities that Student had been provided and engaged in through the program.

24. Further, a sample Student Evaluation Form was shared, which indicated that data would also be collected regarding Student's interactions with his Career Coach.

25. Additionally, as a student in the Rock Life Program, Student would reside on campus in a residence hall. He would also attend academic classes and was to receive the support and supervision necessary to enable him to do so successfully.

26. On May 10, 2018, Student's IEP team met to revise his IEP prior to the start of the Rock Life Program. At that time, it was explicitly noted that he would be fully included through the Rock Life Program.

27. On September 5, 2018, the District issued a NOREP confirming Student's placement in the Rock Life Program.

28. Given Student's identified areas of need, as well as his employment and independent living goals, Plaintiffs worked to ensure the staff at the Rock Life Program had the information necessary to enable them to support Student appropriately.

29. Despite their efforts, it soon became clear to Plaintiffs that the supports they had anticipated were not being provided.

**Impact of Program on Plaintiffs**

30. First, Plaintiffs learned that Student was not being provided socialization opportunities, nor was data being collected.

31. In an effort to ensure Student was not denied this element of the college experience, Plaintiffs identified two college students not affiliated with the Rock Life Program who encouraged Student to attend events on campus with them and their friends. Plaintiffs paid these students $21.65 per hour to provide this support.

32. Moreover, Plaintiffs were not provided any data suggesting Student was consistently working with a Career Coach.

33. Further, Plaintiffs later learned that the individuals providing the career coaching, when it was provided, were not specifically trained to do so.

34. In addition, Graduate Students in the Adaptive Physical Education Master's Program required Student and his peers in the Rock Life Program to serve as participants in Adaptive Physical Education course research work. More specifically, Student was required to participate in a program wherein he was forced to ride a two-wheel bicycle, despite making clear he was not interested. Rather than making an effort to communicate with Student and determine why he was reluctant to engage in this program, staff ignored his concerns. In doing so, they failed to recognize that Student was already proficient in riding a three-wheel bicycle and did not require any additional instruction.

35. As a result of the Rock Life Program's failure to secure appropriate Career Coaches or to provide adequate Work Based Learning Experiences ("WBLE") as promised, Plaintiffs were forced to secure the services of Evolve Coaching, an outside agency that offers college and employment coaching to students with disabilities.

36. When Plaintiffs discovered Student was being denied the WBLE opportunities they had been assured were an essential component of the Rock Life Program, they reached out to the Office of Vocational Rehabilitation ("OVR"). Through the Pittsburgh office, Plaintiffs were able to secure services and opportunities for Student.

37. However, when the Rock Life Program was notified of this, they contacted their local OVR office, alleging Student was "unemployable." As a result, the services were withdrawn and Student was denied any WBLE opportunities during the remainder of his time in the Rock Life Program.

38. In addition to being inappropriate, the Program's contention that Student was "unemployable" was completely inaccurate. In fact, Student had worked competitively throughout his high school career, ultimately qualifying for SSDI on his own work history by the age of eighteen.

39. Evolve began working with Student during the Spring 2019 semester, and for the first time, Plaintiffs began to note some improvement.

40. Plaintiffs were later informed that Rock Life Staff had begun taking Student to counseling appointments, attending the sessions with him, and obtaining confidential information as a result.

41. Despite their participation in the sessions, the staff failed to share any relevant information with Plaintiffs, thereby preventing them from ensuring Student received the support that he required. Given the staff's unwillingness to permit Student to cultivate independence in appropriate ways, their failure to share this essential information with Plaintiffs was even more frustrating.

42. Additionally, Plaintiffs learned that Student was not being provided the supports outlined in his IEP. As a result, he was often late for class, was unable to properly purchase meals for himself in the dining hall using his meal plan, and could not access the assistive technology on his iPad that he needed in his academic courses.

43. Despite sharing with Rock Life Program staff prior to Student's enrollment that he required assistive technology, such as the iPad, to access his educational programming, this support was not provided. In fact, although Plaintiffs explicitly requested that Student be provided instruction on the use of email, this was entirely ignored. Rather, staff failed

to even upload the appropriate software onto Student's iPad that he required to access instruction, and never worked with Student on the appropriate use of technology.

44. Further, Plaintiffs also discovered that, rather than being fully included as the Program had advertised, Student was being forced to retake academic courses he had previously completed in high school. These classes were completely segregated, thus denying Student the opportunity to engage with his peers.

45. Even more troubling, Student regressed in several areas as a result of his time in the Rock Life Program. For example, prior to his attendance Student was able to travel independently in the community, utilizing public transportation, air travel and international travel. However, Rock Life staff ignored this, instead walking Student to class each day. As a result, Plaintiffs were forced to again work with Student to redevelop this skill upon his withdrawal from the Program.

46. Once in class, staff failed to provide Student any academic support, which was an identified area of need.

47. Despite insisting on walking Student to class, when he truly required assistance in this area he was again ignored. One particularly upsetting example occurred when Student became ill and thus had to make an appointment at the campus health center. Staff escorted Student to his initial appointment, but when the follow-up was to occur he was not supported. As a result, he missed the appointment, and Plaintiffs were ultimately required to pick him up from campus, as he had developed pneumonia and it was not diagnosed at the campus health center.

48. Plaintiff C.V. was forced to spend hours attempting to coordinate additional services and supports for Student to enable him to access the minimal programming being provided by

the Rock Life Program. Absent Plaintiff's advocacy and the resources she was able to secure, Student would have been isolated and excluded.

49. Ultimately, Plaintiffs were forced to make the difficult decision to locate an alternative program for Student. As a result of Slippery Rock University's failure to appropriately supervise and support Student, he was denied an entire year of educational services and supports.

50. Moreover, Plaintiffs were forced to use their own funds to secure the college student mentors who worked with Student as described above, as well as the support of Evolve.

**COUNT I: RETALIATION UNDER SECTION 504**

51. Plaintiffs incorporate the allegations in paragraphs 14 through 50 above as though fully set forth herein.

52. Section 504 of the Rehabilitation Act provides specific protections for parents who seek educational services for their children. 34 C.F.R. 100.7(e).

53. In *Lauren W. ex rel. Jean W. v. DeFlaminis*, the Court established a three-part test: (1) did the parent engage in protected activities; (2) was the parent the target of adverse action by the school; and (3) was there a causal connection between the protected activity and the retaliation. 480 F.3d 259, 267 (3d Cir. 2007).

54. First, as previously described, Plaintiffs reached out to the Pittsburgh OVR office to secure services and opportunities for Student that were not being provided through the Rock Life Program. Parents advocating for Student's work and learning experiences is a statutorily protected activity.

55. Second, upon learning of Plaintiff-parents' outreach to OVR, the Rock Life Program contacted the local OVR office and alleged that Student was "unemployable." This was an obvious adverse action on the part of the Program against Plaintiffs.

56. Third, this retaliation against Plaintiffs' protected activity resulted in OVR services being withdrawn and Student being denied any WBLE opportunities for the remainder of his time at the Program. This illustrates a clear causal connection between the protected activity of advocating for Student and Defendant's retaliation.

57. Plaintiffs, therefore, were the target of adverse action in the form of Defendant telling OVR that Student was not employable, despite Student's work history that definitively shows otherwise.

58. Upon information and belief, Defendant receives federal funding.

59. The record supports Plaintiffs' retaliation claim, and thus, Defendant violated the rights provided them by the implementing regulations of Section 504.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Defendant together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

### COUNT II: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 RELATED TO PLAINTIFFS C.V. & J.V.

### COUNT III: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT RELATED TO PLAINTIFFS C.V. & J.V.

60. Plaintiffs incorporate the allegations in paragraphs 14 through 59 above as though fully set forth herein.

61. The same standards govern both the Section 504 and the ADA claims. *S.H.*, 729 F.3d at 260. Thus, Counts III and IV will be considered together here.

62. A plaintiff asserting an associational discrimination claim under Section 504 and Title II of the ADA must plausibly allege:

> (1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination.

*Schneider v. Cnty. of Will*, 190 F. Supp. 2d 1082, 1091 (N.D. Ill. 2002) (*citing* 28 C.F.R. § 35.130(g)).

63. The first two elements of an associational discrimination claim are easily met in the present matter. Plaintiffs C.V. and J.V. are Student's parents. Furthermore, Defendant clearly knew of this association.

64. Defendant discriminated against Plaintiffs C.V. and J.V. because of their association with Student by continuously failing to provide sufficient supervision and support, despite Plaintiffs C.V.'s and J.V.'s constant efforts and requests, to allow Student to access Defendant's programming.

65. Defendant ignored Plaintiffs C.V.'s and J.V.'s concerns, which directly resulted in Student being denied the benefits of Defendant's program in the same way as his peers without disabilities.

66. As a result of Defendant's actions described in this Complaint, Plaintiff C.V. was forced to expend significant time, energy, and effort in securing appropriate supports for Student. This negatively impacted her ability to work, and also created significant emotional strain.

67. Plaintiff J.V. also suffered direct injury as a result of the discrimination. He was forced to witness both his wife and son suffer because of Defendant's actions, which significantly impacted his mental and physical health.

68. Therefore, Plaintiffs C.V. and J.V. have suffered discrimination on the basis of their association with Student.

**WHEREFORE**, Plaintiffs respectfully request that this Court find that Defendant discriminated against C.V. and J.V. based on their association with an individual with a disability and award Plaintiffs all remedies available under Section 504 and the ADA for these violations, including monetary damages and attorneys' fees and costs.

### COUNT IV: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT: DELIBERATE INDIFFERENCE DISCRIMINATION

### COUNT V: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT: DELIBERATE INDIFFERENCE DISCRIMINATION

69. Plaintiffs incorporate the allegations in paragraphs 14 through 68 above as though fully set forth herein.

70. Section 504 prohibits disability discrimination by recipients of federal funds. The statute provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

29 U.S.C. § 794(a).

71. Compensatory damages are an available remedy under Section 504 based on a showing of deliberate indifference discrimination. *S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 260-65 (3d Cir. 2013).

72. Section 202 of the ADA similarly states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This standard applies even to

entities that do not receive Federal funds. *Id.*

73. The same standards govern both the Section 504 and the ADA claims. *S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 260 (3d Cir. 2013). Thus, Counts I and II will be considered together here.

74. The ADA also permits the award of compensatory damages based on a showing of intentional discrimination. *Id.* at 260-65.

75. Upon information and belief, Defendant receives federal funds and is, therefore, a covered entity within the meaning of Section 504 and the ADA.

76. Student has a disability that substantially limits and affects his major life functions, and he is, therefore, a person with a disability within the meaning of Section 504 and the ADA.

77. Courts have generally applied a two-part standard for deliberate indifference wherein a plaintiff requests compensatory damages, requiring both (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that likelihood." *S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 263 (3d Cir. 2013).

78. Deliberate indifference "does not require a showing of personal ill will or animosity toward the disabled person. . . . However, deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *Id.* (citations omitted) (internal quotation marks omitted).

79. Student has a federally protected right as a student with a disability to have access to educational programming in the same way as other peers. It is substantially likely that not having access to an educational program will result in harm.

80. Student was not able to access Defendant's educational program due to his disabilities. He was denied appropriate accommodations to address his Down syndrome and Apraxia of Speech.

81. Defendant was made aware of Student's disability when Plaintiffs first inquired about enrolling Student in the Program and was provided not only with an updated IEP in anticipation of his enrollment for Fall 2018 semester, but also with a NOREP implemented through the District on September 4, 2018.

82. Despite this knowledge and possession of a legal document, Defendant did not offer Student the supports required.

83. Therefore, the first prong of the deliberate indifference standard is met, as Defendant had knowledge that Student was an individual with a disability, and that without proper support and accommodations, Student would be unable to access Defendant's educational programming, resulting in the harm of Student not receiving the education and benefits of the Program.

84. Despite this knowledge, Defendant failed to act to mitigate this harm. Instead, Defendant kept Student segregated from non-Program students, did not install the proper software onto Student's assistive technology device (ATD) to allow him access to Program materials, did not provide Student with trained Career Counselors, did not provide adequate assistance to and from medical appointments, and did not provide Student with socialization opportunities.

85. Student was denied the benefits of Defendant's educational program when Defendant failed to provide the accommodations to which he was entitled, despite his Section 504

eligibility. As a result, he was denied a benefit provided to all students – an appropriate education – solely because of his disabilities.

86. Defendant knew that this action would result in harm to Student, as Student required the supports identified by the District prior to Student's placement in Defendant's program to succeed in an educational setting.

87. In other words, Defendant made the deliberate choice to not to provide Student with appropriate supports and accommodations, despite knowing this would harm Student.

88. As a result, per the requirements of the second prong of the deliberate indifference standard, Defendant elected to deny Student supports, thereby discriminating against him under Section 504 and the ADA.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Defendant together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request this Court enter an Order:

1. Assuming jurisdiction of this case;

2. Declaring that the Defendants' actions constituted retaliation against Plaintiffs C.V. and J.V. under Section 504 and the Americans with Disabilities Act;

3. Awarding compensatory damages for Defendant's violations under Section 504 and the Americans with Disabilities Act;

4. Awarding monetary damages to Plaintiffs to address the emotional, mental, and physical anguish and distress experienced as a result of the Defendant's violation of Section 504 and the Americans with Disabilities Act;

5. Reimbursement of the cost of the college student mentors hired by the family;

6. Reimbursement of the cost of the career counseling provided by Evolve Coaching;

7. Reimbursement of attorneys' fees and costs; and

8. Such other relief as this Court deems just and proper.

Respectfully Submitted,

/s/ *Kristen C. Weidus*
Kristen C. Weidus, Esq.
PA Attorney ID 313486
Ruder Law
One Oxford Center
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Telephone: (412) 281-4959
kristenweidus@ruderlaw.com

Date: July 29, 2021